IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **WILLIAM EDGAR LEWIS, et al.,** | : | Civ. No. 1:25-CV-447 |
| **Plaintiffs,** | : | |
| v. | : | |
| | : | (Magistrate Judge Carlson) |
| **RICHARD KEUERLEBER, et al.,** | : | |
| **Defendants.** | : | |

**MEMORANDUM OPINION**

I.   **Factual Background and Procedural History**

This case was referred to the undersigned on April 24, 2025. Upon review we note that the plaintiffs filed a prolix, 224 page complaint on March 11, 2025. (Doc. 1). This complaint names the York County sheriff, several deputies and a number of courthouse agencies as defendants and cites to various federal criminal and civil rights. (Id.)  In the past two months the plaintiffs have also filed a spate of wide ranging motions, including a motion which seeks preliminary injunctive relief at the outset of this litigation.  (Doc. 13).

The motion arises in the context of what appears to be contentious domestic relations litigation in the Court of Common Pleas of York County since it appears that a protection from abuse order was entered against Mr. Lewis in the York County courts, and these defendants may have obligations to enforce and investigate any

1

alleged violations of that order. In this motion the plaintiffs invite us to enjoin the defendants from performing a number of their core functions. For example, the motion requests that we enjoin the sheriff's office from detaining or arresting the plaintiffs; from coming within 100 feet of the plaintiffs; from communicating with the plaintiffs; or from conducting any form of surveillance of the plaintiffs. (Id.) Thus, much of the relief sought by the plaintiffs goes far beyond preserving the *status quo*. Instead, the plaintiffs seek relief in the form of orders which would necessarily require us to intervene in the state court proceedings which have inspired this federal case.

It is against this backdrop that we consider the plaintiffs' motion for preliminary injunction. The motion is fully briefed by the parties and is now ripe for resolution.[1] For the reasons set forth below, the motion for preliminary injunction will be denied since the plaintiffs have not made the legal showing necessary for such extraordinary relief.

## II. Discussion

### A. Preliminary Injunctions – The Legal Standard

Motions for preliminary injunctions are governed by Federal Rule of Civil Procedure 65 and are judged by exacting legal standards. In order to obtain a

---

[1] The defendants have now responded to this motion, (Doc. 88), and the plaintiffs have notified us that they do not intend to file a reply brief in support of their motion. (Doc. 91).

preliminary injunction, the moving party must show (1) a substantial likelihood of success on the merits; (2) irreparable injury to the moving party if relief is not granted; (3) that a balance of equities favors the movant's request for injunctive relief; and (4) that a preliminary injunction is in the public interest. Benisek v. Lamone, 138 S. Ct. 1932, 1943-44 (2018) (quoting Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 24 (2008)). The first two elements are critical, and are set forth in the conjunctive, as the Court of Appeals for the Third Circuit has held that "[a] failure to show a likelihood of success or a failure to demonstrate irreparable injury must necessarily result in the denial of a preliminary injunction." Instant Air Freight, Co. v. C.F. Air Freight, Inc., 882 F.2d 797, 800 (3d Cir. 1989) (quoting In Re Arthur Treacher's Franchisee Litigation, 689 F.2d 1137, 1143 (3d Cir. 1982) (internal quotations omitted)). In this regard, it is well settled that:

> The movant must, as a threshold matter, establish the two "most critical" factors: likelihood of success on the merits *and* irreparable harm. Reilly v. City of Harrisburg, 858 F.3d 173, 179 (3d Cir. 2017). Under the first factor, the movant must show that "it can win on the merits." Id. This showing must be "significantly better than negligible but not necessarily more likely than not." Id. The second factor carries a slightly enhanced burden: the movant must establish that it is "more likely than not" to suffer irreparable harm absent the requested relief. Id. Only if these "gateway factors" are satisfied may the court consider the third and fourth factors, which aim to balance the equities by examining the potential for harm to others if relief is granted and whether the public interest favors injunctive relief. Id. at 176, 179. The court must then balance all four factors to determine, in its discretion, whether the circumstances warrant injunctive relief. Id. at 179.

3

Camacho Lopez v. Lowe, 452 F. Supp. 3d 150, 157 (M.D. Pa. 2020) (emphasis added).

Further, a preliminary injunction is "never awarded as of right." Benisek, 138 S. Ct. at 1943. Rather, when considering a motion for a preliminary injunction, we are reminded that "a preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." Mazurek v. Armstrong, 520 U.S. 968, 972 (1997) (quoting 11A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2948, pp. 129–130 (2d ed. 1995)). As such, the Third Circuit has long observed that "upon an application for a preliminary injunction to doubt is to deny." Madison Square Garden Corp. v. Braddock, 90 F.2d 924, 927 (3d Cir. 1937).

Moreover:

> [I]n order to secure a preliminary injunction, "[a]ny irreparable harm must be imminent. Cont'l Grp., Inc. v. Amoco Chems. Corp., 614 F.2d 351, 359 (3d Cir. 1980) ('The requisite for injunctive relief has been characterized as a clear showing of *immediate* irreparable injury or a presently existing actual threat.') (emphasis added) (internal quotations omitted); see also, e.g., StrikeForce Techs., Inc. v. WhiteSky, Inc., No. 13-1895, 2013 WL 2658859, at *5 (D.N.J. June 11, 2013) (declining to issue preliminary injunction where plaintiff failed to make 'a clear demonstration' of the imminent threat of disclosure or confidential information). This demands a fact-specific inquiry. See, e.g., Laidlaw, Inc. v. Student Transp. of Am., Inc., 20 F.Supp.2d 727, 766–67 (D.N.J. 1998) ('[I]rreparable harm is not automatically presumed from a finding that plaintiffs have a likelihood of success on the merits; rather, the court must still make a careful examination of the particular facts.')." Synthes, Inc. v. Gregoris, 228 F. Supp. 3d 421, 440 (E.D. Pa.

4

2017).

Burton v. Wetzel, No. 1:16-CV-1953, 2017 WL 4284345, at *6 (M.D. Pa. Sept. 27, 2017).

Likewise:

> [W]here the requested preliminary injunction "is directed not merely at preserving the *status quo* but ... at providing mandatory relief, the burden on the moving party is particularly heavy." Punnett v. Carter, 621 F.2d 578, 582 (3d Cir. 1980). Mandatory injunctions should be used sparingly. United States v. Price, 688 F.2d 204, 212 (3d Cir. 1982). . . . Furthermore, it is well-settled that "[t]he purpose of a preliminary injunction is to preserve the *status quo*, not to decide the issues on their merits." Anderson v. Davila, 125 F.3d 148, 156 (3d Cir. 1997). Therefore, in a case such as this, where the . . ."plaintiff's request for immediate relief in h[er] motion for preliminary injunction necessarily seeks resolution of one of the ultimate issues presented in [the] ... Complaint, ... [the] plaintiff cannot demonstrate that [s]he will suffer irreparable harm if [s]he is not granted a preliminary injunction, because the ultimate issue presented will be decided either by this court, upon consideration of defendants' motion[s] ..., or at trial. As a result, plaintiff's motion for preliminary injunction should be denied." Messner, 2009 WL 1406986, at *5.

Burton, 2017 WL 4284345, at *6.

It is against these legal benchmarks that we analyze the instant motion for preliminary injunction.

## B. <u>The Motion for Preliminary Injunction Will Be Denied</u>.

Mindful of the fact that when considering motions for preliminary injunction we are cautioned that "to doubt is to deny" we will decline the plaintiffs' invitation

to secure additional relief at the inception of this case that necessarily calls upon us to intervene in state court domestic relations litigation.

In this case, the motion for preliminary injunction fails on several scores. First, while we do not in any way prejudge the ultimate merits of this case, at this juncture it cannot be said that the plaintiffs have has met the first threshold requirement for injunctive relief by showing a likelihood of success on the merits. In this regard, we recognize that, in evaluating the likelihood of success for purposes of a motion for preliminary injunction, a more-likely-than-not showing of success on the merits is not required. Yet, it is not enough that the chance of success on the merits be better than negligible, and more than a mere possibility of relief is required. Reilly, 858 F.3d at 179 n.3. Here, we find that this burden is not met since the plaintiffs may encounter of series of significant legal obstacles in pursuing their claims.

At the outset, the plaintiffs' motion, which inevitably invites us to set aside or re-examine the validity of state court orders, encounters a threshold legal obstacle. As we have explained in the past:

> [W]e lack subject matter jurisdiction over the[se] issues . . . , which necessarily invite a federal court to review, re-examine and reject state court rulings in state domestic relations cases.
>
> This we cannot do. Indeed, the United States Supreme Court has spoken to this issue and has announced a rule, the Rooker–Feldman doctrine, which compels federal district courts to decline invitations to conduct what amounts to appellate review of state trial court decisions. As described by the Third Circuit:

> That doctrine takes its name from the two Supreme Court cases that gave rise to the doctrine. Rooker v. Fidelity Trust Co., 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). The doctrine is derived from 28 U.S.C. § 1257 which states that "[f]inal judgments or decrees rendered by the highest court of a state in which a decision could be had, may be reviewed by the Supreme Court....". See also Desi's Pizza, Inc. v. City of Wilkes Barre, 321 F.3d 411, 419 (3d Cir.2003). "Since Congress has never conferred a similar power of review on the United States District Courts, the Supreme Court has inferred that Congress did not intend to empower District Courts to review state court decisions." Desi's Pizza, 321 F.3d at 419.

Gary v. Braddock Cemetery, 517 F.3d 195, 200 (3d Cir.2008).

Because federal district courts are not empowered by law to sit as reviewing courts, reexamining state court decisions, "[t]he Rooker–Feldman doctrine deprives a federal district court of jurisdiction in some circumstances to review a state court adjudication." Turner v. Crawford Square Apartments III, LLP, 449 F.3d 542, 547 (3d Cir.2006). Cases construing this jurisdictional limit on the power of federal courts have quite appropriately:

> [E]mphasized the narrow scope of the Rooker–Feldman doctrine, holding that it "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." [Exxon Mobil Corp. v. Saudi Basic Industries Corp.], 544 U.S. at 284, 125 S.Ct. at 1521–22; see also Lance v. Dennis, 546 U.S. 459, ——, 126 S.Ct. 1198, 1201, 163 L.Ed.2d 1059 (2006).

Id.

However, even within these narrowly drawn confines, it has been consistently recognized that the Rooker–Feldman doctrine prevents

7

federal judges from considering civil rights lawsuits which seek to re-examine state domestic relations court rulings that are presented "by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced." Kwasnik v. Leblon, 228 F. App'x 238, 242 (3d Cir.2007). In such instances, the federal courts have typically deferred to the state court domestic relations decisions, and rebuffed efforts to use federal civil rights laws to review, or reverse, those state court rulings. See, e.g., Marran v. Marran, 376 F.3d 143 (3d Cir.2004); Kwasnik 228 F. App'x 238, 242; Smith v. Department of Human Services, 198 F. App'x 227 (3d Cir.2006); Van Tassel v. Lawrence County Domestic Relations Section, 659 F.Supp.2d 672, 690 (W.D.Pa.2009) aff'd sub nom. Van Tassel v. Lawrence County Domestic Relations Sections, 390 F. App'x 201 (3d Cir.2010) (Rooker–Feldman doctrine operates as a jurisdictional bar to plaintiff's claims if the injuries of which she complains were caused by a state court judgment or ruling which was entered against her); Buchanan v. Gay, 491 F.Supp.2d 483, 487 (D.Del.2007); Rose v. County of York, No. 05–5820, 2007 WL 136682 (E.D.Pa. Jan.12, 2007); Logan v. Lillie, 965 F.Supp. 695, 696 (E.D.Pa.1997) aff'd, 142 F.3d 428 (3d Cir.1998); Behr v. Snider, 900 F.Supp. 719, 721 (E.D.Pa.1995).

Rose v. York Cnty., No. 1:13-CV-2056, 2013 WL 4456220, at *3–4 (M.D. Pa. Aug. 1, 2013), report and recommendation adopted, No. 1:13-CV-2056, 2013 WL 4434748 (M.D. Pa. Aug. 16, 2013). These jurisdictional and jurisprudential considerations weigh against granting sweeping injunctive relief at the outset of this litigation, since that relief would necessarily imply the invalidity of at least some state court orders.

Further, to the extent that this complaint invites this court to enjoin future enforcement of state court orders in a pending domestic relations case, this *pro se* pleading runs afoul of a settled tenet of federal law, the Younger abstention doctrine.

The Younger abstention doctrine is inspired by basic considerations of comity that are fundamental to our federal system of government. As defined by the courts: "Younger abstention is a legal doctrine granting federal courts discretion to abstain from exercising jurisdiction over a claim when resolution of that claim would interfere with an ongoing state proceeding." Kendall v. Russell, 572 F.3d 126, 130 (3d Cir. 2009) (citing Younger v. Harris, 401 U.S. 37, 41 (1971) ("[W]e have concluded that the judgment of the District Court, enjoining appellant Younger from prosecuting under these California statutes, must be reversed as a violation of the national policy forbidding federal courts to stay or enjoin pending state court proceedings except under special circumstances")).

This doctrine, which is informed by principles of comity, is also guided by these same principles in its application. As the Third Circuit has observed:

> "A federal district court has discretion to abstain from exercising jurisdiction over a particular claim where resolution of that claim in federal court would offend principles of comity by interfering with an ongoing state proceeding." Addiction Specialists, Inc. v. Twp. of Hampton, 411 F.3d 399, 408 (3d Cir.2005) (citing Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971)). As noted earlier, the Younger doctrine allows a district court to abstain, but that discretion can properly be exercised only when (1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise federal claims. Matusow v. Trans-County Title Agency, LLC, 545 F.3d 241, 248 (3d Cir.2008).

Kendall, 572 F.3d at 131.

Once these three legal requirements for Younger abstention are met, the

9

decision to abstain rests in the sound discretion of the district court and will not be disturbed absent an abuse of that discretion. Lui v. Commission on Adult Entertainment Establishments, 369 F.3d 319, 325 (3d Cir. 2004). Moreover, applying these standards, federal courts frequently abstain from hearing matters which necessarily interfere with on-going state cases. Lui, 369 F.3d 319; Zahl v. Harper, 282 F.3d 204 (3d Cir.2002). Indeed, the Court of Appeals has expressly applied Younger abstention to state court domestic relations litigation, holding that: "This is precisely the type of case suited to Younger abstention, as the state proceeding implicates the important state interest of preserving the state's judicial system." Lazaridis v. Wehmer, 591 F.3d 666, 671 (3d Cir.2010).

In this case, the plaintiff's *pro se* complaint reveals that all of the legal prerequisites for Younger abstention are present. First, it is evident that there are state proceedings in this case. In fact, the plaintiffs have recently filed a pleading that acknowledges an upcoming state court hearing but announces an intent to boycott that hearing. (Doc. 93). Second, it is also apparent that those proceedings afford the plaintiffs a full and fair opportunity to litigate the issues raised in this lawsuit in these state cases. See Sullivan v. Linebaugh, 362 F. App'x 248, 249–50 (3d Cir. 2010). Finally, it is clear that the state proceedings implicate important state interests, since the state case involves domestic relations matters, an issue of paramount importance to the state. See Lazaridis, 591 F.3d at 671. Since the legal

requirements for Younger abstention are fully met here, the decision to abstain rests in the sound discretion of this Court. However, given the important state interest in enforcement of its domestic relations rulings, and recognizing that the state courts are prepared to fully address the merits of these matters, we believe that the proper exercise of this discretion weighs in favor of abstention and denial of this motion for preliminary injunction.

Additionally, this motion does not merely request that we preserve the *status quo*; instead, the plaintiffs seek affirmative relief which could potentially hobble the sheriff's office in its law enforcement responsibilities. Since "a mandatory injunction is an extraordinary remedy that is only granted sparingly by the courts," Trinity Indus., Inc. v. Chicago Bridge & Iron Co., 735 F.3d 131, 139 (3d Cir. 2013), we should refrain from affording this form of sweeping mandatory relief at the outset of this litigation.

Further, we note that the plaintiffs have not carried their burden of showing that they face immediate, irreparable harm of an inunction does not issue. On this score, the plaintiffs' voiced concerns, while sincere, are entirely speculative. An injunction may not rest upon speculation.

While the plaintiffs' failure to meet these two essential threshold requirements of a substantial likelihood of success on the merits and irreparable harm is fatal to this motion for preliminary injunction, we will briefly address the remaining factors

11

under Rule 65, whether a balance of equities favors the movant's request for injunctive relief and whether a preliminary injunction is in the public interest. With respect to these two considerations, we find that a balancing of the equities between the parties tilts in favor of these defendants since entry of the injunction proposed by the plaintiffs may well interfere with the defendants' ability to ensure compliance with any state court orders. We also conclude that the greater public interest is served through the denial of this motion for preliminary injunctive relief, since the remedies sought here would necessarily invite us to re-examine and potential interfere with prior state court proceedings in the field of domestic relations. We should approach such issues with great caution given our uncertain jurisdiction in this field since:

> The domestic relations exception "divests the federal courts of power to issue divorce, alimony, and child custody decrees," Ankenbrandt v. Richards, 504 U.S. 689, 703, 112 S.Ct. 2206, 119 L.Ed.2d 468 (1992), because it has long been settled that "[t]he whole subject of the domestic relations of husband and wife ... belongs to the laws of the states, and not to the laws of the United States," Ex parte Burrus, 136 U.S. 586, 593–94, 10 S.Ct. 850, 34 L.Ed. 500 (1890).

Daniels v. Cynkin, 34 F. Supp. 3d 433, 441 (D.N.J. 2014), aff'd, 597 F. App'x 704 (3d Cir. 2015).

Simply put at this juncture, we do not believe that the plaintiffs' motion meets these exacting legal benchmarks that would warrant immediate injunctive relief. Therefore, we will decline to grant the plaintiffs this sweeping relief at the outset of this litigation.

### III. Conclusion

Accordingly, for the foregoing reasons, the plaintiffs' motion for a preliminary injunction (Doc. 13) is DENIED.

An appropriate order follows.

*S/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge

DATED: May 30, 2025