IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **WILLIAM EDGAR LEWIS, et al.,** | : | Civ. No. 1:25-CV-446 |
| | : | |
| **Plaintiffs,** | : | |
| | : | |
| v. | : | |
| | : | (Magistrate Judge Carlson) |
| | : | |
| **TRACEY CHANCE, et al.,** | : | |
| | : | |
| **Defendants.** | : | |
| | | |
| **WILLIAM EDGAR LEWIS, et al.,** | : | Civ. No. 1:25-CV-447 |
| | : | |
| **Plaintiffs,** | : | |
| | : | |
| v. | : | |
| | : | (Magistrate Judge Carlson) |
| | : | |
| **RICHARD KEUERLEBER, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

### MEMORANDUM OPINION AND ORDER

I. **Introduction and Background**

In a short span of months, these two cases have become mired in tortured procedural histories, marked by a multiplicity of filings by the plaintiffs, who are

embroiled in state and federal court litigation concerning some highly contentious domestic relations disputes.

There is a regrettable, but common, theme to the plaintiffs' litigation in these cases; namely, a constant visceral dissatisfaction with court rulings which do not accede to their demands. In the state domestic relations proceedings, this disdain for adverse rulings has manifested itself in at least two ways. First, by their own admission the plaintiffs have boycotted some state court proceedings which they have deemed to be illegitimate. The second manifestation of this judicial disdain is found in the instant federal cases, which explicitly invite us to take the procedurally inappropriate step of overruling the state courts and mandating that those state courts rule in favor of the plaintiffs.

At the time that we assumed responsibility for this litigation on April 24, 2025, the docket in this case was in disarray. The plaintiffs had freighted the record with numerous motions, notices, and other filings. In some instances, the plaintiffs' motions were unaccompanied by briefs. In other instances, the plaintiffs sought relief that we deemed inappropriate, particularly at the outset of litigation, since they essentially asked us to grant them sweeping relief at the outset of the case without making a showing of substantial likelihood of success on the merits. Accordingly, given these facts, we were legally obliged to deny many of these

requests while striving to assist the parties in reaching a just, fair and inexpensive resolution of their dispute.

Our judicial action, ruling on the matters presented to us by the parties, has now inspired the plaintiffs to voice their displeasure with us in a number of ways, including the filing of motions to disqualify us from presiding in these two cases. (Doc. 105). There is a particular irony to these motions which highlights the feckless and erratic manner in which the plaintiffs have proceeded in this litigation. We are only presiding in these cases because the plaintiffs specifically consented to magistrate judge jurisdiction.[1] Therefore, having agreed in May of 2025, that we should preside, (Civil No. 1:25-cv-447 Doc. 69; Civil No. 1:25-cv-446 Doc. 77), by June 2, 2025, the plaintiffs sought our recusal.

What transpired during this brief period of time which inspired the plaintiffs' ire? We did our job, ruling on pending matters in the way we deemed appropriate. Thus, the current recusal motions are expressly premised upon the plaintiffs'

---

[1] We note that the plaintiffs have at times suggested that their own consent was illegitimate because they believed that they were consenting to some other judge's jurisdiction, but the facts plainly belie this claim. The docket reflects that we were assigned to this case prior to the issuance of the consent forms to the parties on April 29, 2025. Moreover, by the time these consent forms were sent to the plaintiffs, we had already ruled upon a number of motions thus making it clear to the plaintiffs that we were handling this case. Those consent forms, in turn, also plainly stated that the parties were consenting to jurisdiction by "a" magistrate judge; they did not afford the plaintiffs some menu from which they could choose a particular judge they deemed most congenial to their claims. Knowing all of this the plaintiffs consented to magistrate judge jurisdiction. Any claim to the contrary is frivolous.

dissatisfaction with our judicial acts and rulings. This is no ground for recusal since it is well established that "a party's displeasure with legal rulings does not form an adequate basis for recusal." Securacomm Consulting, Inc. v. Securacom, Inc., 224 F.3d 273, 278 (3d Cir.2000). Therefore, mindful that "a judge 'has as strong a duty to sit when there is no legitimate reason to recuse as he does to recuse when the law and facts require'" Conklin v. Warrington Township, 476 F.Supp.2d 458, 463 (M.D. Pa. 2007), for the reasons set forth below we find that the grounds for recusal posited by the plaintiffs are both expedient and illegitimate. Accordingly, the motions for our recusal (Doc. 105) must be denied.

## II.     Discussion

### A.     Recusal Motion–Standard of Review

The legal standards which govern such recusal requests were aptly summarized in Conklin v. Warrington Township, 476 F. Supp. 2d 458 (M.D. Pa. 2007). In terms that are equally applicable here, the court explained that:

> The disqualification standard is set forth in 28 U.S.C. § 455, which provides in pertinent part as follows:
>
> (a) Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.
> (b) He shall also disqualify himself in the following circumstances:
> (1) Where he has a personal bias or prejudice concerning a party....

> Id. Pursuant to the above quoted language, the court must consider whether its rulings and statements objectively produce the appearance of bias against [the plaintiff]. As explained by the Supreme Court, these provisions "require ... 'bias and prejudice' ... to be evaluated on an objective basis, so that what matters is not the reality of bias or prejudice but its appearance." Liteky v. United States, 510 U.S. 540, 548, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994). This objective standard requires recusal when a "reasonable man knowing all the circumstances would harbor doubts concerning the judge's impartiality." Edelstein v. Wilentz, 812 F.2d 128, 131 (3d Cir.1987) (citing United States v. Dalfonso, 707 F.2d 757, 760 (3d Cir.1983)); see also In re Antar, 71 F.3d 97, 101 (3d Cir.1995). If the record presents a close question, the court must resolve the issue in favor of disqualification. Nichols v. Alley, 71 F.3d 347, 352 (10th Cir.1995).

Id. at 462-3.

It is clear, however, that a party's disappointment with what the party anticipates may be the court's rulings cannot form the basis for recusal. As we have observed:

> The Third Circuit has repeatedly observed that "a party's displeasure with legal rulings does not form an adequate basis for recusal." Securacomm Consulting, Inc. v. Securacom, Inc., 224 F.3d 273, 278 (3d Cir.2000) (citing In re TMI Litig., 193 F.3d 613, 728 (3d Cir.1999) and Jones v. Pittsburgh Nat'l Corp., 899 F.2d 1350, 1356 (3d Cir.1990)). Subsections 455(a) and (b)(1) require the source of bias to be extrajudicial, that is stemming from a source outside of the proceeding, or of such an intensity as to make a fair trial impossible. Blanche Rd. Corp. v. Bensalem Twp., 57 F.3d 253 (3d Cir.1995), cert. denied, 516 U.S. 915, 116 S.Ct. 303, 133 L.Ed.2d 208 (1995). As stated by the Supreme Court:
>
>> [O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the

> current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. They *may* do so if they reveal an opinion that derives from an extrajudicial source; and they will do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible.
>
> Liteky, 510 U.S. at 555, 114 S.Ct. 1147 (emphasis in original).

Id. at 463.

Furthermore, in assessing recusal requests, courts must remain mindful that, in the hands of some litigants, a recusal motion may simply be a calculated tactical tool designed to avoid the result which the law dictates in a case, or attempt to unilaterally choose a new judge. Thus, in every instance:

> [T]he court must consider whether attacks on a judge's impartiality are simply subterfuge to circumvent anticipated adverse rulings. In re Antar, 71 F.3d at 101; Alexander v. Primerica Holdings, Inc., 10 F.3d 155, 162 (3d Cir.1993). Indeed, a judge "has as strong a duty to sit when there is no legitimate reason to recuse as he does to recuse when the law and facts require." Bryce v. Episcopal Church in the Diocese of Colorado, 289 F.3d 648, 659 (10th Cir.2002) (quoting Nichols, 71 F.3d at 351); Cooney v. Booth, 262 F.Supp.2d 494, 508 (E.D.Pa.2003); see also United States v. Snyder, 235 F.3d 42, 46 n. 1 (1st Cir.2000); Curley v. St. John's University, 7 F.Supp.2d 359, 362 (S.D.N.Y.1998).

Id. at 463.

In order to ensure that recusal requests do not become last-minute devices used by expedient parties to attempt to avoid outcomes mandated by law, it is clear that a party's use of invective toward the court, or disparagement of the court, cannot create recusal grounds since:

> There is a "well established judicial rejection of a rule that would permit a litigant or attorney to disqualify a judge by criticizing him." United States v. Evans, 262 F.Supp.2d 1292, 1296 (D.Utah 2003) (quoting United States v. Helmsley, 760 F.Supp. 338, 342-43 (S.D.N.Y.1991)). In other words, a litigant cannot unilaterally create the grounds for recusal. See In re Mann, 229 F.3d 657, 658-59 (7th Cir.2000) (filing of judicial misconduct charge in reaction to court's decision insufficient ground for disqualification). As [one court] has observed: "A party cannot cast sinister aspersions, fail to provide a factual basis for those aspersions, and then claim that the judge must disqualify herself because the aspersions, *ex propio vigore,* create a cloud on her impartiality." In re United States, 158 F.3d at 35.

Conklin, 476 F.Supp.2d at 464.

In addition, there are also procedural standards which a party moving for recusal must meet. These standards are prescribed by 28 U.S.C. § 144, which as a procedural matter "mandates recusal '[w]henever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party.'" Conklin, 476 F.Supp.2d at 463 n. 10. Thus, a proper, and timely filed, affidavit is a legal prerequisite to a recusal motion, a

7

necessary step to impress upon all parties the gravity of the proceedings. When such an affidavit is timely filed: "it is the responsibility of the district judge against whom an affidavit is filed to assess the legal sufficiency of the affidavit. United States v. Townsend, 478 F.2d 1072, 1073 (3d Cir.1973) (stating that the mere filing of an affidavit 'does not automatically disqualify a judge'). An affidavit is legally sufficient if the facts alleged therein: (1) are material and stated with particularity; (2) would convince a reasonable person that a bias exists; and, (3) evince bias that is personal, as opposed to judicial in nature. United States v. Thompson, 483 F.2d 527, 528 (3d Cir.1973)." Conklin, 476 F.Supp.2d at 463 n. 10. This is a burden which cannot be met through vague and conclusory accusations, or subjective assertions. Id. (citing Jones v. Pittsburgh Nat'l Corp., 899 F.2d 1350, 1356 (3d Cir.1990) (holding that, to be legally sufficient, an affidavit must contain more than mere conclusory allegations)); Cooney v. Booth, 262 F.Supp.2d 494, 502 (E.D.Pa.2003) (holding that opinions and conclusions based upon conjecture and speculation are legally insufficient to warrant recusal).

Judged against these legal standards, we must decline the plaintiffs' motions that we recuse ourselves from this case. In this case, the plaintiffs' motions demanding our recusal plainly rest upon their subjective sense of disappointment regarding the court's recent rulings on various matters. While we appreciate that the role of the judge, and the task of deciding, entails the risk of disappointment for

some litigants, that disappointment with legal rulings simply does not translate into grounds for recusal. Quite the contrary, as the court of appeals has repeatedly observed, "a party's displeasure with legal rulings does not form an adequate basis for recusal." Securacomm Consulting, Inc. v. Securacom, Inc., 224 F.3d 273, 278 (3d Cir.2000) (citing In re TMI Litig., 193 F.3d 613, 728 (3d Cir.1999) and Jones v. Pittsburgh Nat'l Corp., 899 F.2d 1350, 1356 (3d Cir.1990)). Accordingly, we conclude our legal analysis of this recusal motion as we began that analysis by reminding the plaintiffs that "a judge 'has as strong a duty to sit when there is no legitimate reason to recuse as he does to recuse when the law and facts require'" Conklin, 476 F.Supp.2d at 463. Guided by this basic truth, these recusal motions will be denied.

    An appropriate order follows.

*S/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge

DATE: July 1, 2025