**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **WILLIAM EDGAR LEWIS, et al.,** | : | **Civ. No. 1:25-CV-447** |
| | : | |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| | : | |
| **RICHARD KEUERLEBER, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

## MEMORANDUM OPINION

### I.    Factual Background and Procedural History

This *pro se* case, which was referred to the undersigned on April 24, 2025, comes before us for consideration of two motions to dismiss the plaintiffs' complaint. (Docs. 162, 163).  The federal litigation which has inspired these motions arises out of highly contentious domestic relations litigation in the Court of Common Pleas of York County, litigation in which it appears that a protection from abuse order was entered against Mr. Lewis in the York County courts.

This ongoing state court litigation inspired the plaintiffs to file a prolix 224-page complaint in federal court on March 11, 2025. (Doc. 1). This complaint names the York County sheriff, several deputies, and a number of courthouse agencies, including various branches of the state court system, as defendants. The balance of

1

the complaint then consists of a catalogue of summary grievances. According to the plaintiffs, the conduct of these state court proceedings has violated the First, Second, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, Thirteenth, and Fourteenth Amendments, as well as 42 U.S.C. § 1983, the Federal Torts Claims Act, the Civil Rights Act of 1964, and various federal criminal civil rights statutes. (Id., at 4).

After asserting this breathtaking array of legal claims, the complaint then lists, in a summary fashion, approximately 213 "incidents" which they contend constitute tortious behavior on the part of the defendants. (Id., at 5-81, 113, 203). Many of these alleged "incidents" appear to consist of little more than commonplace occurrences in the course of state protection from abuse proceedings such as the entry of orders, service of pleadings, and compliance with court directives relating to confiscation of firearms. (Id.) In other instances the plaintiffs decry what they describe as past infractions which allegedly took place between 2015 and 2020. (Id., at 78-112).

The plaintiffs then demand global relief from the defendants, including a minimum of $106,500,000 in compensatory damages, along with punitive damages. (Id., at 202-205). In addition, the plaintiffs seek sweeping injunctive relief. This injunctive relief would, in effect, call upon us to overturn the state court rulings in this ongoing litigation, restore the plaintiffs' parental rights, expunge their state records, order criminal investigations and prosecutions of others, enjoin the future

2

course of this litigation, implement statutory reforms, and award the plaintiffs the keys to the City of York. (Id., at 207-215).

It is against this backdrop that we consider the defendants' motions to dismiss this extraordinary filing. These motions are fully briefed by the parties and are now ripe for resolution. For the reasons set forth below, the motions to dismiss will be granted.

## II. <u>Discussion</u>

### A. <u>Motions to Dismiss—Standard of Review.</u>

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint. It is proper for the court to dismiss a complaint in accordance with Rule 12(b)(6) of the Federal Rules of Civil Procedure only if the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). With respect to this benchmark standard for legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007), continuing with our opinion in <u>Phillips</u> [<u>v. County of Allegheny</u>, 515 F.3d 224, 230 (3d Cir. 2008)], and culminating recently with the Supreme Court's decision in <u>Ashcroft v. Iqbal</u>, –U.S.–, 129 S. Ct. 1937 (2009), pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

3

Fowler v. UPMC Shadyside, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. Jordan v. Fox, Rothschild, O'Brien & Frankel, Inc., 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Additionally, a court need not "assume that a . . . plaintiff can prove facts that the . . . plaintiff has not alleged." Associated Gen. Contractors of Cal. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983). As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid cause of action, a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Id. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." Id.

In keeping with the principles of Twombly, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss. In Ashcroft v. Iqbal,

4

556 U.S. 662 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 679. According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678. Rather, in conducting a review of the adequacy of a complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id. at 679.

Thus, following Twombly and Iqbal, a well-pleaded complaint must contain more than mere legal labels and conclusions; it must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's

5

entitlement to relief. A complaint has to "show" such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

As the Court of Appeals has observed:

The Supreme Court in Twombly set forth the "plausibility" standard for overcoming a motion to dismiss and refined this approach in Iqbal. The plausibility standard requires the complaint to allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570, 127 S. Ct. 1955. A complaint satisfies the plausibility standard when the factual pleadings "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556, 127 S. Ct. 1955). This standard requires showing "more than a sheer possibility that a defendant has acted unlawfully." Id. A complaint which pleads facts "merely consistent with" a defendant's liability, [ ] "stops short of the line between possibility and plausibility of 'entitlement of relief.' "

Burch v. Milberg Factors, Inc., 662 F.3d 212, 220-21 (3d Cir. 2011), cert. denied,

132 S. Ct. 1861, 182 L.Ed.2d 644 (2012).

In practice, consideration of the legal sufficiency of a complaint entails a

three-step analysis:

First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Iqbal, 129 S. Ct. at 1947. Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Id. at 1950. Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.' Id.

Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010).

In considering a motion to dismiss, the court generally relies on the complaint,

6

attached exhibits, and matters of public record. Sands v. McCormick, 502 F.3d 263, 268 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s] that a defendant attached as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002); see also U.S. Express Lines, Ltd. v. Higgins, 281 F.3d 382, 388 (3d Cir. 2002) (holding that "[a]lthough a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss in one for summary judgment"). However, the court may not rely on other parts of the record in determining a motion to dismiss, or when determining whether a proposed amended complaint is futile because it fails to state a claim upon which relief may be granted. Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).

It is against these legal guideposts that we assess the legal sufficiency of this complaint.

## B. **The Motions to Dismiss Will Be Granted**.

The complaint lodged by Lewis and Holmes in this case is profoundly flawed in multiple respects. We have, in the course of this litigation, previously brought many of the defects in this pleading to the plaintiffs' attention, but to no avail; they have persisted in pursuing fruitless claims. Therefore, we are now constrained to dismiss this legally infirm complaint. The fatal deficiencies in this pleading, which compel dismissal of the complaint, are addressed separately below.

We turn first to the plaintiffs' demands for equitable and injunctive relief, demands which include the plaintiffs' insistence that we overturn the state court rulings in this ongoing litigation, restore the plaintiffs' parental rights, expunge their state records, order criminal investigations and prosecutions of others, enjoin the future course of this litigation, implement statutory reforms, and award the plaintiffs the keys to the City of York. (Doc. 1 at 207-215). As discussed below, the plaintiffs' demands that we use our equitable powers to warp this state court litigation in their favor encounter insurmountable legal obstacles.

## 1.   **The Rooker-Feldman Doctrine Applies Here.**

At the outset, this complaint, which necessarily invites us to review, re-examine and reverse various state court orders, encounters a threshold legal obstacle. As we have explained in the past:

[W]e lack subject matter jurisdiction over the[se] issues . . . , which necessarily invite a federal court to review, re-examine and reject state court rulings in state domestic relations cases.

This we cannot do. Indeed, the United States Supreme Court has spoken to this issue and has announced a rule, the Rooker–Feldman doctrine, which compels federal district courts to decline invitations to conduct what amounts to appellate review of state trial court decisions. As described by the Third Circuit:

> That doctrine takes its name from the two Supreme Court cases that gave rise to the doctrine. Rooker v. Fidelity Trust Co., 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). The doctrine is derived from 28 U.S.C. § 1257 which states that "[f]inal judgments or decrees rendered by the highest court of a state in which a decision could be had, may be reviewed by the Supreme Court....". See also Desi's Pizza, Inc. v. City of Wilkes Barre, 321 F.3d 411, 419 (3d Cir.2003). "Since Congress has never conferred a similar power of review on the United States District Courts, the Supreme Court has inferred that Congress did not intend to empower District Courts to review state court decisions." Desi's Pizza, 321 F.3d at 419.

Gary v. Braddock Cemetery, 517 F.3d 195, 200 (3d Cir.2008).

Because federal district courts are not empowered by law to sit as reviewing courts, reexamining state court decisions, "[t]he Rooker–Feldman doctrine deprives a federal district court of jurisdiction in some circumstances to review a state court adjudication." Turner v. Crawford Square Apartments III, LLP, 449 F.3d 542, 547 (3d Cir.2006). Cases construing this jurisdictional limit on the power of federal courts have quite appropriately:

> [E]mphasized the narrow scope of the Rooker–Feldman doctrine, holding that it "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court

> judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." [Exxon Mobil Corp. v. Saudi Basic Industries Corp.], 544 U.S. at 284, 125 S.Ct. at 1521–22; see also Lance v. Dennis, 546 U.S. 459, ——, 126 S.Ct. 1198, 1201, 163 L.Ed.2d 1059 (2006).

> Id.

> However, even within these narrowly drawn confines, it has been consistently recognized that the Rooker–Feldman doctrine prevents federal judges from considering civil rights lawsuits which seek to re-examine state domestic relations court rulings that are presented "by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced." Kwasnik v. Leblon, 228 F. App'x 238, 242 (3d Cir.2007). In such instances, the federal courts have typically deferred to the state court domestic relations decisions, and rebuffed efforts to use federal civil rights laws to review, or reverse, those state court rulings. See, e.g., Marran v. Marran, 376 F.3d 143 (3d Cir.2004); Kwasnik 228 F. App'x 238, 242; Smith v. Department of Human Services, 198 F. App'x 227 (3d Cir.2006); Van Tassel v. Lawrence County Domestic Relations Section, 659 F.Supp.2d 672, 690 (W.D.Pa.2009) aff'd sub nom. Van Tassel v. Lawrence County Domestic Relations Sections, 390 F. App'x 201 (3d Cir.2010) (Rooker–Feldman doctrine operates as a jurisdictional bar to plaintiff's claims if the injuries of which she complains were caused by a state court judgment or ruling which was entered against her); Buchanan v. Gay, 491 F.Supp.2d 483, 487 (D.Del.2007); Rose v. County of York, No. 05–5820, 2007 WL 136682 (E.D.Pa. Jan.12, 2007); Logan v. Lillie, 965 F.Supp. 695, 696 (E.D.Pa.1997) aff'd, 142 F.3d 428 (3d Cir.1998); Behr v. Snider, 900 F.Supp. 719, 721 (E.D.Pa.1995).

!

Rose v. York Cnty., No. 1:13-CV-2056, 2013 WL 4456220, at *3–4 (M.D. Pa. Aug.

1, 2013), report and recommendation adopted, No. 1:13-CV-2056, 2013 WL

4434748 (M.D. Pa. Aug. 16, 2013). These jurisdictional and jurisprudential

considerations weigh against granting sweeping injunctive relief at the outset of this litigation, since that relief would necessarily imply the invalidity of at least some state court orders.

### 2. __The Younger Abstention Doctrine Also Applies Here__.

Further, to the extent that this complaint invites this Court to enjoin future enforcement of state court orders in a pending domestic relations case, this *pro se* pleading runs afoul of another settled tenet of federal law, the Younger abstention doctrine. The Younger abstention doctrine is inspired by basic considerations of comity that are fundamental to our federal system of government. As defined by the courts: *"*Younger abstention is a legal doctrine granting federal courts discretion to abstain from exercising jurisdiction over a claim when resolution of that claim would interfere with an ongoing state proceeding." Kendall v. Russell, 572 F.3d 126, 130 (3d Cir. 2009) (citing Younger v. Harris, 401 U.S. 37, 41 (1971) ("[W]e have concluded that the judgment of the District Court, enjoining appellant Younger from prosecuting under these California statutes, must be reversed as a violation of the national policy forbidding federal courts to stay or enjoin pending state court proceedings except under special circumstances")).

This doctrine, which is informed by principles of comity, is guided by these same principles in its application. The Supreme Court has recently narrowed the scope of Younger, employing courts first to determine whether the parallel state

action falls within one of "three exceptional categories" which trigger <u>Younger</u> abstention: (1) criminal prosecutions, (2) "certain civil enforcement proceedings," and (3) "civil proceedings involving certain orders uniquely in furtherance of the state court's ability to perform their judicial functions." <u>Harmon v. Dep't of Fin.</u>, 811 Fed. Appx. 156, 157 (3d Cir. 2020) (citing <u>Sprint Commc'ns, Inc. v. Jacobs</u>, 571 U.S. 69, 79, 134 S. Ct. 584, 592, 187 L. Ed. 2d 505 (2013)).

Once it is established the parallel action falls within a category to which <u>Younger</u> applies, courts are directed to consider three additional factors[1] in determining whether abstention is appropriate. <u>Malhan v. Sec'y United States Dep't of State</u>, 938 F.3d 453, 456 (3d Cir. 2019). As the United States Court of Appeals for the Third Circuit has observed:

> Abstention under <u>Younger</u> is appropriate only if (1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise federal claims. <u>See</u> <u>Middlesex County Ethics Committee v. Garden State Bar Association</u>, 457 U.S. 423, 432, 102 S.Ct. 2515, 2521, 73 L.Ed.2d 116 (1982); <u>Kentucky West Virginia Gas Co.</u>, 791 F.2d at 1116. Even if the necessary three predicates exist, however, <u>Younger</u> abstention is not appropriate if the federal plaintiff can establish that (1) the state proceedings are being undertaken in bad faith or for purposes of harassment or (2) some other extraordinary circumstances exist, such as proceedings pursuant to a flagrantly unconstitutional statute, such that deference to the state proceeding will present a significant and immediate potential for irreparable harm to the federal interests asserted. <u>See</u> <u>Middlesex</u>, 457 U.S. at 435, 102 S.Ct. at

---

[1] These factors were established by the Supreme Court in <u>Middlesex County Ethics Comm. v. Garden State Bar Assn.</u>, 457 U.S. 423, 433-434 (1982) and are referred to as <u>Middlesex</u> factors.

2523; Younger, 401 U.S. at 49–50, 53–54, 91 S.Ct. at 753, 755. Schall v. Joyce, 885 F.2d 101, 106 (3d Cir. 1989)

Once these three legal requirements for Younger abstention are met, the decision to abstain rests in the sound discretion of the district court and will not be disturbed absent an abuse of that discretion. Lui v. Commission on Adult Entertainment Establishments, 369 F.3d 319, 325 (3d Cir. 2004). Moreover, applying these standards, federal courts frequently abstain from hearing matters which necessarily interfere with ongoing state cases. Id.; Zahl v. Harper, 282 F.3d 204 (3d Cir. 2002). Indeed, the Court of Appeals has expressly applied Younger abstention to state court domestic relations litigation, holding that: "This is precisely the type of case suited to Younger abstention, as the state proceeding implicates the important state interest of preserving the state's judicial system." Lazaridis v. Wehmer, 591 F.3d 666, 671 (3d Cir. 2010).

In this case, the plaintiff's *pro se* complaint reveals that all of the legal prerequisites for Younger abstention are present. First, it is evident that there were state proceedings in this case. In fact, the plaintiffs have recently filed a pleading that acknowledges an upcoming state court hearing but announces an intent to boycott that hearing. (Doc. 93). Second, it is also apparent that those proceedings afford the plaintiffs a full and fair opportunity to litigate the issues raised in this lawsuit in these state cases. See Sullivan v. Linebaugh, 362 F. App'x 248, 249–50

13

(3d Cir. 2010). Finally, it is clear that the state proceedings implicate important state interests, since the state case involves domestic relations matters, an issue of paramount importance to the state. See Lazaridis, 591 F.3d at 671. Since the legal requirements for Younger abstention are fully met here, the decision to abstain rests in the sound discretion of this Court. However, given the important state interest in enforcement of its domestic relations rulings, and recognizing that the state courts are prepared to fully address the merits of these matters, we believe that the proper exercise of this discretion weighs in favor of abstention and denial of this motion for preliminary injunction.

### 3. **The Anti-Injunction Act Applies Here.**

Additionally, as we have noted, in this *pro se* complaint the plaintiffs seek an extraordinary form of injunctive relief in that they invite us to enjoin pending state court litigation and prescribe the manner in which the state courts must address their concerns in the future. This prayer for relief encounters an immediate statutory hurdle—the Anti-Injunction Act. As the court of appeals has aptly observed:

> That statute reads as follows: "A court of the United States may not grant an injunction to stay proceedings in a State court except [1] as expressly authorized by Act of Congress, or [2] where necessary in aid of its jurisdiction, or [3] to protect or effectuate its judgments." 28 U.S.C. § 2283.

> The general rule is thus that "an injunction against execution or any other proceeding to enforce a state judgment is forbidden as well as one against the prosecution of state litigation to obtain a judgment."

14

> <u>Jos. L. Muscarelle, Inc. v. Cent. Iron Mfg. Co.</u>, 328 F.2d 791, 793 (3d
> Cir. 1964). And while there are three statutorily prescribed
> exceptions, those exceptions "are to be construed narrowly," <u>In re
> Diet Drugs</u>, 282 F.3d 220, 233 (3d Cir. 2002), the practical effect of
> which is that the A-IA "prohibits most federal court injunctions
> staying state court proceedings," <u>In re Prudential Ins. Co. of Am.
> Sales Pracs. Litig.</u>, 314 F.3d 99, 103 (3d Cir. 2002).

<u>Norton v. Adams</u>, No. 25-2361, 2025 WL 2231797, at *2 (3d Cir. Aug. 1, 2025).

The United States Supreme Court has underscored for us the central role
which the Anti-Injunction Act plays in defining the comity owed to state courts in
our federal system, explaining that:

> Any doubts as to the propriety of a federal injunction against state
> court proceedings should be resolved in favor of permitting the state
> courts to proceed in an orderly fashion to finally determine the
> controversy. The explicit wording of § 2283 itself implies as much,
> and the fundamental principle of a dual system of courts leads
> inevitably to that conclusion.

<u>Atl. Coast Line R. Co. v. Bhd. of Locomotive Eng'rs</u>, 398 U.S. 281, 297, 90 S. Ct.
1739, 1748, 26 L. Ed. 2d 234 (1970).

On occasion, litigants in state domestic relations cases have turned to the
federal courts seeking to enjoin these state proceedings. This litigation has taken
many different forms over time, but in light of the statutory and prudential limits set
on the exercise of federal courts when it comes to enjoining state foreclosure
proceedings, these efforts have routinely encountered the same fate, rejection by the
courts. Thus, a rising tide of caselaw has found that the Anti-Injunction Act bars

attempts to enjoin pending state domestic relations cases like these PFA proceedings.[2]

Nonetheless, we are reminded that the Anti-Injunction Act should not be applied in a reflexive or categorical fashion to bar state court injunctions. <u>Norton v. Adams</u>, No. 25-2361, 2025 WL 2231797, at *3 (3d Cir. Aug. 1, 2025). Rather, we must individually assess whether the plaintiffs' claims fall within any of the three narrowly construed statutory exceptions to the Act. <u>Id.</u> at *2. Having conducted this individualized examination, we find that the plaintiffs cannot avail themselves of any of these narrowly crafted exceptions to the rule forbidding federal injunctions of state court proceedings.

At the outset, it is clear that the Act's third exception—which allows this court to enjoin state proceedings when necessary "to protect or effectuate its judgments" 28 U.S.C. § 2283—has no application in this case. This exception is plainly inapposite since we have entered no judgments in favor of the plaintiffs which need protection through injunctive relief.

Likewise, upon reflection, Lewis and Holmes cannot rely on the first narrow

---

[2] <u>Reid v. Luna</u>, No. 23-CV-4818, 2023 WL 8720666, at *1 (E.D. Pa. Dec. 18, 2023); <u>Bonawitz v. Fosko</u>, No. 3:CV-14-0783, 2014 WL 1745890, at *2 (M.D. Pa. Apr. 30, 2014);<u>Steinbronn v. City of Philadelphia</u>, No. CIV. A. 92-3744, 1992 WL 328923, at *2 (E.D. Pa. Oct. 27, 1992).

exception to the Anti-Injunction Act which allows federal courts to enjoin state legal proceedings when expressly authorized by Act of Congress to obtain the extraordinary relief which they seek. On this score, it bears repeating that, essentially, the plaintiffs invite us under the federal civil rights statute, 42 U.S.C. § 1983, to enjoin state judges to rule in his favor in specific ways in his cases. As a § 1983 injunction targeting a state court, this claim is not "expressly authorized by Act of Congress." Quite the contrary, longstanding precedent, and the plain language of § 1983 specifically caution against such injunctions.

In the first instance:

> The Supreme Court long has recognized that judges are immune from suit under section 1983 for monetary damages arising from their judicial acts. See Mireles v. Waco, 502 U.S. 9, 9, 112 S.Ct. 286, 287, 116 L.Ed.2d 9 (1991); Forrester v. White, 484 U.S. 219, 225–27, 108 S.Ct. 538, 543–44, 98 L.Ed.2d 555 (1988); Stump v. Sparkman, 435 U.S. 349, 355–56, 98 S.Ct. 1099, 1104, 55 L.Ed.2d 331 (1978).

Gallas v. Supreme Ct. of Pennsylvania, 211 F.3d 760, 768–69 (3d Cir. 2000).

Moreover, this longstanding judicial immunity from liability under § 1983 for damages claims has also been extended by Congress to claims for injunctive relief which target state judges. By its terms this seminal civil rights statute largely forbids such claims, stating that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or

other person within the jurisdiction thereof to the deprivation of any
rights, privileges, or immunities secured by the Constitution and laws,
shall be liable to the party injured in an action at law, suit in equity, or
other proper proceeding for redress, *except that in any action brought
against a judicial officer for an act or omission taken in such officer's
judicial capacity, injunctive relief shall not be granted unless a
declaratory decree was violated or declaratory relief was unavailable.*

42 U.S.C. § 1983 (emphasis added).

In this case, notwithstanding the plaintiffs' sweeping allegations of systematic
abuse by the courts, Lewis and Holmes simply have not alleged well pleaded facts
which would support a finding that a declaratory decree was violated or that
declaratory relief is unavailable. Rather, it seems clear that the plaintiffs have
avenues of declaratory relief available to them through the state court system.
Therefore, Lewis and Holmes have not made the exacting showing necessary to fall
within this narrowly construed exception to the Anti-Injunction Act.

Finally, it cannot be said in this case that the plaintiffs may avail himself of
the final exception to the Anti-Injunction Act's prohibition against enjoining state
court proceedings, an exception that allows federal courts to enjoin state cases where
necessary in aid of its jurisdiction. This exception is unavailable to the plaintiffs
because—as discussed below—their legal claims fail on their merits for a host of
reasons.

### 4. **The Sheriff's Office Is Not a Proper § 1983 Defendant**

At the outset, to the extent that the complaint brings a § 1983 federal civil rights claim against the Sheriff's Department as an institutional defendant, we note that this department is not a proper institutional defendant in this action since police and sheriff departments serve only as an administrative arm of a municipality or county, and it is a municipality or county through which any liability must flow to the police department. Indeed, it has been repeatedly held that a police department or sheriff's office is not a "person" for purposes of § 1983 and therefore is not a proper defendant in a § 1983 action. Blackwell v. Middletown Borough Police Dep't, 1:12-CV-825, 2012 WL 6012568 (M.D. Pa. Nov. 16, 2012), report and recommendation adopted, 1:12-CV-825, 2012 WL 6002689 (M.D. Pa. Nov. 30, 2012); see Golya v. Golya, 2007 WL 2301085, *9, 2007 U.S. Dist. LEXIS 58093, *29–30 (M.D. Pa. 2007) (explaining that courts within the Third Circuit have concluded that a police department is merely a sub-unit of the local government and is not amenable to suit under § 1983); Wivell v. Liberty Township Police Dept., 2007 WL 2155540, *2, 2007 U.S. Dist. LEXIS 54306, *5–6 (M.D. Pa. 2007) (explaining that police departments are not subject to suit in a § 1983 action); Mitros v. Cooke, 170 F. Supp. 2d 504, 507 (E.D. Pa. 2001) (noting that city police department is a sub-unit of the city government that is merely a vehicle through which the city fulfills its policing functions, and is not a separate entity for purposes

of suit); Tobin v. Badamo, 3:00CV783, 2000 WL 1880262 (M.D. Pa. Dec. 20, 2000) (municipal police department is not a proper party to a section 1983 action because it is merely a subunit of the city and not a separate corporate entity); McMahon v. Westtown–East Goshen Police Dept., No. Civ.A. 98-3919, 1999 WL 236565 at *4, 1999 U.S. Dist. LEXIS 5551 at *4 (E.D. Pa. Apr. 22, 1999) (citing Johnson v. City of Erie, 834 F. Supp. 873, 878–79 (W.D. Pa. 1993); Agresta v. City of Philadelphia, 694 F. Supp. 117, 119 (E.D. Pa. 1988)); Johnson v. City of Erie, Pa., 834 F. Supp. 873, 879 (W.D. Pa. 1993).

Indeed, cases are legion dismissing sheriff departments as inappropriate institutional defendants in § 1983 lawsuits. Thus, it is well-settled that:

> [W]hen a sheriff's department is alleged to have violated a person's constitutional rights, it is the County which must be sued. The Sheriff's Department is a unit of ... County government. As such, it does not have an independent corporate existence and is not a person that can be sued under section 1983. See Garcia v. County of Bucks, Pa., 155 F. Supp. 2d 259, 263 n.4 (citing Bonenberger v. Plymouth Twp., 132 F.3d 20, 26 n. 4 (3d Cir. 1997)) ("As in past cases, we treat the municipality and its police as a single entity for purposes of section 1983 liability.").

Bauer v. Lackawanna Cty., No. 3:18CV779, 2019 WL 144848, at *3 (M.D. Pa. Jan. 9, 2019); see, e.g., Yisrael v. State Police, No. CV 3:16-572, 2017 WL 1062439, at *4 (M.D. Pa. Mar. 21, 2017); Anderson v. Dauphin Cty. Adult Prob. Office, No. 1:15-CV-00878, 2016 WL 769278, at *4 (M.D. Pa. Jan. 25, 2016), report and recommendation adopted, No. 1:15-CV-878, 2016 WL 759162 (M.D. Pa. Feb. 26,

2016); Butts v. SCI-Camp Hill, No. CIV.A. 1:08-CV-2259, 2009 WL 222653, at *1 (M.D. Pa. Jan. 29, 2009). In light of this consistent case law rejecting efforts to name local sheriff departments as institutional defendants in § 1983 actions, the claims against this institutional defendant will also be dismissed. See McGowan v. Franklin Cnty. Sheriff Dep't, No. 1:20-CV-1288, 2020 WL 13735144, at *3–4 (M.D. Pa. July 30, 2020), report and recommendation adopted, No. 1:20-CV-01288, 2020 WL 13738623 (M.D. Pa. Sept. 11, 2020).

### 5.  **The Eleventh Amendment Bars Claims Against the State Court System**

This complaint also advances a constitutionally feckless claim against various state court agencies. In essence, Lewis and Holmes attempt to sue the state court system demanding at least $106,500,000 in damages.

This they cannot do. Indeed, this complaint, which purports to bring an $106,000,000 civil claim against the state courts, fundamentally misunderstands the nature of our Constitution. As a matter of constitutional law, the Eleventh Amendment to the Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the . . . States." U.S. Const. amend XI. By its terms, the Eleventh Amendment strictly limits the power of federal courts to entertain cases brought by citizens against the state and state agencies. Moreover, a suit brought

against an individual acting in his or her official capacity constitutes a suit against the state and therefore also is barred by the Eleventh Amendment. Will, 491 U.S. 58.

Pursuant to the Eleventh Amendment, states, state agencies and state officials who are sued in their official capacity are generally immune from lawsuits in federal courts brought against them by citizens. Seminole Tribe v. Florida, 517 U.S. 44, 54 (1996). Under the Eleventh Amendment, the Commonwealth's immunity exists as a matter of law unless waived by the state, or expressly and unequivocally abrogated by Congress. Congress has not expressly abrogated this constitutional immunity with respect to federal civil rights lawsuits against the Pennsylvania state courts and the Commonwealth clearly has not waived its immunity. Quite the contrary, the Commonwealth has specifically by statute invoked its Eleventh Amendment immunity in 42 Pa. Cons. Stat. § 8521(b). This, while Pennsylvania has, by law, waived sovereign immunity in limited categories of cases brought against the Commonwealth in state court; see 42 Pa. Cons. Stat. § 8522, Section 8521(b), which flatly states that: "[n]othing contained in this subchapter shall be construed to waive the immunity of the Commonwealth from suit in federal courts guaranteed by the Eleventh Amendment to the Constitution of the United States." 42 Pa. Con. Stat. § 8521(b).

The Eleventh's Amendment's bar prohibiting lawsuits in federal court against

agencies expressly applies to claims like those brought here by the plaintiffs against

the state court system. As we have observed in the past:

> These state court agencies, . . ., are defined by statute as arms of the state courts, and are institutions of state government. See, e.g., Walters v. Washington County, No. 06–1355, 2009 WL 7936639 (W.D.Pa. March 23, 2009); Van Tassel v. Lawrence County Domestics Relations Section, No. 09–266, 2009 WL 3052411 (W.D.Pa. Sept.22, 2009). Therefore, individual counties cannot be held liable for the actions of state court judges, who are part of the unified state court system.
>
> Since the courts are institutions of state government, this complaint further runs afoul of basic constitutional rules limiting lawsuits against state agencies and officials. As a matter of constitutional law, the Eleventh Amendment to the Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the ... States ....", U.S. Const. Amend XI. By its terms, the Eleventh Amendment strictly limits the power of federal courts to entertain cases brought by citizens against the state and state agencies. Moreover, a suit brought against an individual acting in his or her official capacity constitutes a suit against the state and, therefore, also is barred by the Eleventh Amendment. Will v. Michigan Dept. of State Police, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989).
>
> Pursuant to the Eleventh Amendment, states, state agencies and state officials who are sued in their official capacity are generally immune from lawsuits in federal courts brought against them by citizens. Seminole Tribe v. Florida, 517 U.S. 44, 54, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996). The constitutional protections afforded to the states and the state court system under the Eleventh Amendment also expressly apply to the state agencies that are integral parts of Pennsylvania's unitary court system. These court officers and agencies enjoy immunity from lawsuit under the Eleventh Amendment. See, e.g., Walters v. Washington County, No. 06–1355, 2009 WL 7936639 (W.D.Pa. March 23, 2009); Van Tassel v. Lawrence County Domestics Relations Section, No. 09–266, 2009 WL 3052411 (W.D.Pa. Sept.22, 2009). Absent an express waiver of the immunity established by the

> Eleventh Amendment, all of these agencies, and their employees who
> are sued in their official capacities, are absolutely immune from
> lawsuits in federal court.

Rose v. York Cty., No. 1:13-CV-2056, 2013 WL 4456220, at *7 (M.D. Pa. Aug. 1,

2013), report and recommendation adopted, No. 1:13-CV-2056, 2013 WL 4434748

(M.D. Pa. Aug. 16, 2013). Therefore, Lewis and Holmes may not pursue these

claims for damages against the state court system in federal court, as they purport to

do in this complaint.

### 6. **Quasi-Judicial Immunity Applies Here.**

There is a necessary corollary to the judicial immunity which prevents us from

entertaining claims against state courts based upon judicial actions. To the extent

that Lewis and Holmes wish to sue various court administrators, clerks,

prothonotaries and deputies for docketing, serving or enforcing court orders these

claims fail as a matter of law since:

> [N]umerous courts have held that certain tasks performed by
> prothonotaries and court clerks are shielded by quasi-judicial
> immunity. See Marcedes v. Barrett, 453 F.2d 391 (3d Cir.1971)
> (holding that a prothonotary who allegedly refused to send the plaintiff
> a requested transcript was acting as a "quasi-judicial official");
> Lockhart, 411 F.2d at 460 (holding that a prothonotary who was acting
> under court direction was immune from suit); Locke, 2008 WL
> 2096815, at *3 (holding that a prothonotary who determined that a
> motion for reconsideration was not timely filed was performing a
> discretionary function and was immune from suit); see also Denlinger,
> 2007 WL 4615960, at *3 (using "court clerks and prothonotaries" as
> examples of individuals who may be entitled to quasi-judicial
> immunity); O'Nembo, 2006 WL 3857487, at *2 (same); Hurst, No. 06-
> 146, 2006 WL 1328729, at *6 (D.Del. May 16, 2006) (same);

McKnight v. Baker, 415 F.Supp.2d 559, 563 (E.D.Pa.2006) (same).

Conklin v. Warrington Twp., No. CIV.A. 1:06-CV-2245, 2008 WL 2704629, at *9

(M.D. Pa. July 7, 2008). This quasi-judicial immunity is grounded upon and derived

from the immunity enjoyed by judges, and acknowledges that:

> In certain circumstances, the doctrine of quasi-judicial immunity
> insulates from suit those public officials who "perform functions
> closely associated with the judicial process." Locke v. Caldwell, No.
> 07-2272, 2008 WL 2096812, at *3 (E.D.Pa. May 16, 2008) (quoting
> Cleavinger v. Saxner, 474 U.S. 193, 200, 106 S.Ct. 496, 88 L.Ed.2d
> 507 (1985)). The dispositive inquiry in determining whether to afford
> an individual quasi-judicial immunity is "the nature of the function
> performed, not the identity of the actor who performed it." Tucker v.
> I'Jama, 173 F. App'x 970, 971 (3d Cir.2006). In other words, quasi-
> judicial immunity attaches when a "public official's role is 'functionally
> comparable' to that of a judge," Dotzel v. Ashbridge, 438 F.3d 320, 325
> (3d Cir.2006) (quoting Hamilton v. Leavy, 322 F.3d 776, 785 (3d
> Cir.2003)), or when a public official acts "pursuant to court directive,"
> see Lockhart v. Hoenstine, 411 F.2d 455, 460 (3d Cir.1969) (basing the
> aforementioned rule upon the "manifest unfairness of subjecting one to
> suit as a consequence of action taken at the direction of officials over
> whom the individual actor has no power or control"); see also
> Alexander v. McMonagle, No. 99-1298, 1999 WL 1210844, at *1
> (E.D.Pa. Dec.9, 1999) ("Quasi-judicial officers who act in accordance
> with their duties or at the direction of a judicial officer are immune from
> suit.")

Id. at *8.

Further, it is well-settled that this quasi-judicial immunity also extends to

deputy sheriffs who serve or enforce facially valid court orders. Thus:

> [A] sheriff may qualify for quasi-judicial immunity when "charged
> with the duty of carrying out facially valid court orders[.]"
> Addlespurger v. Corbett, 461 F. App'x 82, 85 (3d Cir. 2012) (citing

25

> Gallas v. Supreme Court of Pa., 211 F.3d 760, 772-73 (3d Cir. 2000)).
> Specifically, actions taken pursuant to orders or writs from a
> Pennsylvania Court of Common Pleas can be protected by quasi-
> judicial immunity. See e.g., Tronetti, 961 F.2d at 1084-85 (deciding that
> a person acted as an "arm of the court" when they acted pursuant to an
> Erie County Court of Common Pleas judicial order); see also
> Addlespurger v. Corbett, 2011 WL 3418975, at *11 (W.D. Pa. Aug. 1,
> 2011), aff'd, 461 F. App'x 82 (3d Cir. 2012) (finding "quasi-judicial
> immunity for all actions taken as part of the official functions of the
> Court of Common Pleas" of Allegheny County).

In re Toppin, 645 B.R. 773, 784 (E.D. Pa. 2022).

In the instant case, the gravamen of the plaintiffs' complaint against the various courthouse and sheriff department individual defendants appears to be that they docketed, served and enforced state court orders. Such conduct is plainly cloaked in immunity and cannot form the basis for a civil rights claim. Therefore, these claims fail as a matter of law.

### 7. **The Plaintiffs May Not Use a Civil Case as a Vehicle for a Criminal Prosecution**.

In addition, the plaintiffs' civil complaint cites to a plethora of federal criminal statutes and apparently invites us to either imply that federal criminal statutes give rise to implied private rights of action or engage in some form of criminal inquest or proceedings in the context of this civil lawsuit.

This we may not do.

At the outset, Lewis and Holmes err in generally implying a private right of action based upon federal criminal statutes. Quite the contrary, in this regard:

> The Court is guided by the general principle that courts are "reluctant to infer a private right of action from a criminal prohibition alone," especially where the criminal statute is "bare" as to private enforcement. Cent. Bank of Denver v. First Interstate Bank of Denver, 511 U.S. 164, 190 (1994); see also Leeke v. Timmerman, 454 U.S. 83, 86 (1981) (holding that private citizens cannot compel criminal prosecution). To this end, the Third Circuit has repeatedly held that criminal statutes generally do not create private rights of action. See Tezler v. Borough of Englewood Cliffs, 783 F. App'x 253, 257–58 (3d Cir. 2019); Timm v. Wells Fargo Bank, 701 F. App'x 171, 175 (3d Cir. 2017); Coleman v. Academy Bus, LLC, 858 F. App'x 584, 585 (3d Cir. 2021); see also Caterbone v. Lancaster City Bureau of Police, Civil Action No. 18-CV-2710, 2018 WL 3549266 at *3 (E.D. Pa. July 24, 2018) ("Criminal statutes do not generally provide a basis for a litigant's civil claims, and this Court lacks the authority to initiate criminal proceedings.").

Miller v. Nelling, No. CV 22-3329-KSM, 2023 WL 2743564, at *3 (E.D. Pa. Mar. 31, 2023).

Nor can the plaintiffs convert this civil case into a vehicle for instigating a criminal prosecution of others. Rather, it is well established that decisions regarding the filing of criminal charges are the prerogative of the executive branch of government, are consigned to the sound discretion of prosecutors, and under the separation of powers doctrine are not subject to judicial fiat. Indeed, it has long been recognized that the exercise of prosecutorial discretion is a matter, "particularly ill-suited to judicial review." Wayte v. United States, 470 U.S. 598, 607, 105 S.Ct. 1524, 84 L.Ed.2d 547 (1985). Recognizing this fact, courts have long held that a civil rights plaintiff may not seek relief in civil litigation in the form of an order directing the

criminal prosecution of some third parties, finding that civil plaintiffs lack standing to make such claims and concluding that such relief simply is unavailable in a civil lawsuit. See, e.g., Ostrowski v. Mehltretter, 20 Fed. Appx. 87, 90 (2d Cir. 2001) (stating that "Ostrowski has no standing to sue for any of Mehltretter's actions. First of all, he has not shown, injury-in-fact. The failure of Mehltretter to investigate or prosecute Bybel did not injure him in any direct manner-he has no 'personal stake in the outcome' of a perjury case brought against (or not brought against) another person."); see also Kim v. Romero, 877 F.2d 64, 1989 WL 67116 at *1 (9th Cir. June 14, 1989) (affirming the dismissal of a suit against various prosecuting authorities for their failure to bring charges against a sheriff for alleged battery); McMinn v. Damiani, 765 F.2d 145, 1985 WL 13323 (6th Cir. May 3, 1985) (affirming the dismissal for lack of standing a pro se civil rights case where plaintiff had sued state prosecuting authorities for failing to investigate or prosecute claims against various state judges and lawyers); Gessner v. Dep't of Corr., 3:14-CV-111, 2014 WL 972290 (M.D. Pa. Mar. 12, 2014); Snyder v. Aaron, CIV.A. 05–1602, 2006 WL 544466 (W.D. Pa. Mar.6, 2006); Mover v. Borough of North Wales, Civ. No. 00–1092, 2000 WL 1665132 at *2 (E.D. Pa.Nov.7, 2000) (stating that "Moyer has no judicially cognizable interest in Timothy Conley's criminal prosecution. Accordingly, an agreement to refrain from prosecuting Conley for sexual assault or to charge him with disorderly conduct or the act thereof violates no constitutional right that Moyer

has standing to assert."); <u>see also Wise v. Augustine</u>, Civ. No. 97–2651, 1997 WL 534695 at *2 (E.D. Pa. Aug.8, 1997) (stating that "[a] private citizen has no constitutional, statutory, or common law right to require a public official to investigate or prosecute a crime."); <u>Dundore v. O'Donnell</u>, Civ. No. 85–2907, 1985 WL 2681 at *2 (E.D.Pa. Sept.17, 1985) (stating that "Defendant O'Donnell is alleged to have refused to file the criminal charges brought by plaintiffs. Although plaintiffs were no doubt aggrieved when O'Donnell refused to file the charges, they have no constitutional right that I am aware of to have criminal charges filed."); <u>Corbin v. Stevens</u>, Civ. No. 91–1054, 1992 WL 96684 at *2 (S.D.N.Y. April 30, 1992) (stating that "[p]laintiff possesses no constitutional right to have someone arrested").

Therefore, to the extent that the plaintiffs attempt to generally imply private rights of action from federal criminal statutes or assert a right to pursue criminal charges in the guise of a civil lawsuit, these claims also fail as a matter of law and will be dismissed.

### 8. <u>Many Claims Are Time-Barred</u>

We also note that the plaintiffs' complaint contains a recital of ancient grudges, various state court legal disputes spanning from 2015 through 2020. These claims are all time-barred by the applicable statute of limitations. As the United States Court of Appeals for the Third Circuit recently explained when it affirmed the screening dismissal of a *pro se* complaint on statute of limitations grounds:

Civil rights claims are subject to the statute of limitations for personal injury actions of the pertinent state. Thus, Pennsylvania's two year statutory period applies to [these] claims. See Lake v. Arnold, 232 F.3d 360, 368 (3d Cir.2000). The limitations period begins when the plaintiff knows or had reason to know of the injury forming the basis for the federal civil rights action. Gera v. Commonwealth of Pennsylvania, 256 Fed.Appx. 563, 564-65 (3d Cir.2007). Although we have not addressed the issue in a precedential decision, other courts have held that although the statute of limitations is an affirmative defense, district court may *sua sponte* dismiss a complaint under § 1915(e) where the defense is obvious from the complaint and no development of the factual record is required. See Fogle v. Pierson, 435 F.3d 1252, 1258 (10th Cir.2006); see also Eriline Co. S.A. v. Johnson, 440 F.3d 648, 656-57 (4th Cir.2006) (citation omitted)(finding that a district court's screening authority under § 1915(e) "differentiates in forma pauperis suits from ordinary civil suits and justifies an exception to the general rule that a statute of limitations defense should not be raised and considered sua sponte.").

Smith v. Delaware County Court 260 F. App'x. 454, 455 (3d Cir. 2008); see also

Jackson v. Fernandez, No. 08-5694, 2009 WL 233559 (D.N.J. Jan. 26, 2009); Hurst

v. City of Dover, No. 04-83, 2008 WL 2421468 (D. Del. June 16, 2008).

It is well-settled that claims brought pursuant to 42 U.S.C. § 1983 are subject

to the state statute of limitations for personal injury actions. Wilson v. Garcia, 471

U.S. 261, 266-67 (1985). In Pennsylvania, the statute of limitations for a personal

injury action is two years. 42 Pa.C.S. § 5524. A cause of action accrues for statute

of limitations purposes when the plaintiff knows or has reason to know of the injury

that constitutes the basis of the cause of action. Sameric Corp. of Delaware, Inc. v.

City of Philadelphia, 142 F.3d 582, 599 (3d Cir. 1998); see also, Nelson v. County

of Allegheny, 60 F.3d 1010 (3d Cir. 1995).

While this two-year limitations period may be extended based upon a continuing wrong theory, a plaintiff must make an exacting showing to avail himself of this ground for tolling the statute of limitations. For example, it is well settled that the "continuing conduct of [a] defendant will not stop the ticking of the limitations clock [once] plaintiff obtained requisite information [to state a cause of action]. On discovering an injury and its cause, a claimant must choose to sue or forego that remedy." Barnes v. American Tobacco Co., 161 F.3d 127, 154 (3d Cir. 1998) (quoting Kichline v. Consolidated Rail Corp., 800 F. 2d 356, 360 (3d Cir. 1986)). See also Lake v. Arnold,  232 F.3d 360, 266-68 (3d Cir. 2000). Instead:

> The continuing violations doctrine is an "equitable exception to the timely filing requirement." West v. Philadelphia Elec. Co., 45 F.3d 744, 754 (3d Cir.1995). Thus, "when a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period; in such an instance, the court will grant relief for the earlier related  acts that would otherwise be time barred." Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am., 927 F.2d 1283, 1295 (3d Cir.1991).In order to benefit from the doctrine, a plaintiff must establish that the defendant's conduct is "more than the occurrence of isolated or sporadic acts." West, 45 F.3d at 755 (quotation omitted). Regarding this inquiry, we have recognized that courts should consider at least three factors: (1) subject matter-whether the violations constitute the same type of discrimination, tending to connect them in a continuing violation; (2) frequency-whether the acts are recurring or more in the nature of isolated incidents; and (3) degree of permanence-whether the act had a degree of permanence which should trigger the plaintiff's awareness of and duty to assert his/her rights and whether the consequences of the act would continue even in the absence of a continuing intent to

discriminate. <u>See id.</u> at 755 n. 9 (citing <u>Berry v. Board of Supervisors of Louisiana State Univ.</u>, 715 F.2d 971, 981 (5th Cir.1983)). The consideration of "degree of permanence" is the most important of the factors. <u>See</u> <u>Berry</u>, 715 F.2d at 981.

<u>Cowell v. Palmer Township</u>. 263 F.3d 286, 292 (3d Cir. 2001).

In the instant case, with respect to these longstanding state legal disputes, it is apparent from the complaint that, for Lewis and Holmes, these matters have long had a perceived degree of permanence which would have triggered their duty to act in a timely fashion, yet they have failed to do so. Accordingly, any claims based upon conduct predating 2022 are now time-barred.

### 9.  **The Plaintiffs' Supervisory Liability Claim Fails.**

In addition, the plaintiffs seem to bring a supervisory liability civil rights claim against the York County sheriff.

This claim also fails. On this score, it is well settled that a claim of a constitutional deprivation cannot be premised merely on the fact that the named defendants were government officials or supervisors when the incidents set forth in the complaint occurred. Quite the contrary, to state a constitutional tort claim, the plaintiff must show that the defendants actively deprived him of a right secured by the Constitution. <u>Morse v. Lower Merion School Dist.</u>, 132 F.3d 902 (3d Cir. 1997); <u>see also</u> <u>Maine v. Thiboutot</u>, 448 U.S. 1 (1980). Constitutional tort liability is personal in nature and can only follow personal involvement in the alleged wrongful

conduct shown through specific allegations of personal direction or of actual knowledge and acquiescence in the challenged practice. Robinson v. City of Pittsburgh, 120 F.3d 1286 (3d Cir. 1997). In particular, with respect to supervisory officials, it is well established that: "A[n individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of *respondeat superior*. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005) (quoting Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988)).

As the Supreme Court has observed:

Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*. . . . See Monell v. New York City Dept. of Social Servs., 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (finding no vicarious liability for a municipal "person" under 42 U.S.C. § 1983); see also Dunlop v. Munroe, 7 Cranch 242, 269, 3 L.Ed. 329 (1812) (a federal official's liability "will only result from his own neglect in not properly superintending the discharge" of his subordinates' duties); Robertson v. Sichel, 127 U.S. 507, 515-516, 8 S.Ct. 1286, 3 L.Ed. 203 (1888) ("A public officer or agent is not responsible for the misfeasances or position wrongs, or for the nonfeasances, or negligences, or omissions of duty, of the subagents or servants or other persons properly employed by or under him, in the discharge of his official duties"). Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.

Ashcroft v. Iqbal,  556 U.S. 662, 676 (2009).

Judged against these legal benchmarks, the plaintiffs' supervisory liability claim founders on two hurdles. First, they have not alleged civilly culpable conduct by any sheriff deputy. Second, nothing in their complaint provides a well-pleaded factual basis for inferring that the sheriff directed or acquiesced in a constitutional infraction.

Therefore, this claim also fails and will be dismissed.

### 10. <u>The Plaintiffs' Supplemental State Law Claims Will Be Dismissed</u>.

Simply put, the complaint lodged by Lewis and Holmes fails to state any cognizable federal claims. Therefore, the plaintiffs' federal claims—which form the grounds for their filing in this court—will be dismissed. The disposition of the plaintiffs' federal legal claims, in turn, dictates the appropriate course for the court to follow in addressing the ancillary state law claims that the plaintiffs may wish to pursue.

In a case such as this, where the jurisdiction of the federal court was premised on alleged federal claims which are found to be subject to dismissal at the outset of litigation, the proper course generally is for "the court [to] decline to exercise supplemental jurisdiction over the plaintiff's state law claims." <u>Bronson v. White</u>, No. 05-2150, 2007 WL 3033865, *13 (M.D. Pa. Oct. 15, 2007) (Caputo, J.) (adopting report and recommendation dismissing ancillary malpractice claim against

dentist) (citing 28 U.S.C. § 1367(c)(3); United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966)). See also Ham v. Greer, 269 F. App'x 149, 151 (3d Cir. 2008) (citing United Mine Workers, 383 U.S. at 726 and Tully v. Mott Supermkts., Inc., 540 F.2d 187, 196 (3d Cir. 1976)) ("Because the District Court appropriately dismissed [the inmate's] Bivens claims, no independent basis for federal jurisdiction remains")). As the Supreme Court has aptly observed:

> Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.

United Mine Workers, 383 U.S. at 726 (footnotes omitted).

The basic tenet that we should refrain from needlessly asserting jurisdiction over what are essentially state law claims applies with particular force here given that the remedies sought by Lewis and Holmes necessarily invite us to re-examine and potentially interfere with prior state court proceedings in the field of domestic relations. We should approach such issues with great caution given our lack of jurisdiction in this field since:

> The domestic relations exception "divests the federal courts of power to issue divorce, alimony, and child custody decrees," Ankenbrandt v. Richards, 504 U.S. 689, 703, 112 S.Ct. 2206, 119 L.Ed.2d 468 (1992), because it has long been settled that "[t]he whole subject of the domestic relations of husband and wife ... belongs to the laws of the states, and not to the laws of the United States," Ex parte Burrus, 136 U.S. 586, 593–94, 10 S.Ct. 850, 34 L.Ed. 500 (1890).

Daniels v. Cynkin, 34 F. Supp. 3d 433, 441 (D.N.J. 2014), aff'd, 597 F. App'x 704 (3d Cir. 2015).

In the instant case, we have concluded that Lewis and Holmes' federal claims should be dismissed. We also find that the plaintiffs' remaining state law claims directly implicate the domestic relations doctrine and are matters that are left "to the laws of the states, and not to the laws of the United States." Id. Therefore, in the exercise of our discretion, we will decline to assert supplemental jurisdiction over potential ancillary state law domestic relations claims in this case where all potential federal claims brought before us fail as a matter of law. Accordingly, these pendent state law claims will be dismissed without prejudice to pursuit of these state law claims in state court. See Payne v. Doe #1, No. 1:22-CV-1876, 2023 WL 3493315, at *5–6 (M.D. Pa. Mar. 27, 2023), report and recommendation adopted, No. 1:22-CV-1876, 2023 WL 3480895 (M.D. Pa. May 16, 2023).

## 11. The Complaint Will Be Dismissed with Prejudice.

Finally, we recognize that in civil rights cases, *pro se* plaintiffs often should be afforded an opportunity to amend a complaint before the complaint is dismissed in its entirety, see Fletcher-Hardee Corp. v. Pote Concrete Contractors, 482 F.3d 247, 253 (3d Cir. 2007), unless granting further leave to amend would be futile or result in undue delay. Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004). In this case,

however, this complaint is profoundly flawed in multiple ways which are not subject to cure by any more artful form of pleading. Therefore, this complaint will be dismissed with prejudice.

### III.    <u>Conclusion</u>

Accordingly, for the foregoing reasons, the Defendants' motions to dismiss, (Docs. 162, 163), are GRANTED.

An appropriate order follows.


<u>*S/ Martin C. Carlson*</u>
Martin C. Carlson
United States Magistrate Judge

DATED: September 30, 2025