IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILLIAM EDGAR LEWIS, et al., | : | Civ. No. 1:25-CV-447 |
| Plaintiffs, | : | |
| v. | : | |
| | : | (Magistrate Judge Carlson) |
| RICHARD KEUERLEBER, et al., | : | |
| Defendants. | : | |

**MEMORANDUM AND ORDER**

I.  **Introduction and Procedural History**

We now write the final chapter in the tortured story of this litigation, as we consider an array of belated jurisdictional challenges launched by the plaintiffs after their complaint failed on its merits. (Docs. 187, 196). Finding that these tardy motions, like the plaintiffs' complaint, fail as a matter of law on a host of grounds, for the reasons set forth below, these motions are denied, and the clerk will be directed to close this case.

This legal saga began on March 11, 2025, when the *pro se* plaintiffs filed a far-reaching, but legally frivolous, complaint in federal court. (Doc. 1). In this pleading, Lewis and Holmes invited this Court to intervene in highly contentious state domestic relations litigation. This ongoing state court litigation inspired the plaintiffs to file a prolix 224-page complaint in federal court on March 11, 2025.

(Doc. 1). The complaint named the York County sheriff, several deputies, and a number of courthouse agencies, including various branches of the state court system, as defendants. The balance of the complaint then consisted of a catalogue of summary grievances. According to the plaintiffs, the conduct of these state court proceedings violated the First, Second, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, Thirteenth, and Fourteenth Amendments, as well as 42 U.S.C. § 1983, the Federal Torts Claims Act, the Civil Rights Act of 1964, and various federal criminal civil rights statutes. (Id., at 4).

After asserting this sweeping array of legal claims, the complaint then listed, in a cursory manner, approximately 213 "incidents" which they contended constituted tortious behavior on the part of the defendants. (Id., at 5-81, 113, 203). Many of these alleged "incidents" appeared to consist of little more than commonplace occurrences in the course of state protection from abuse proceedings such as the entry of orders, service of pleadings, and compliance with court directives relating to confiscation of firearms. (Id.) In other instances the plaintiffs decried what they described as past infractions which allegedly took place between 2015 and 2020. (Id., at 78-112).

The plaintiffs then demanded breathtakingly broad relief from the defendants, including a minimum of $106,500,000 in compensatory damages, along with

punitive damages. (Id., at 202-205). In addition, the plaintiffs sought sweeping injunctive relief.  This injunctive relief would have called upon us to overturn the state court rulings in this ongoing litigation, restore the plaintiffs' parental rights, expunge their state records, order criminal investigations and prosecutions of others, enjoin the future course of this litigation, implement statutory reforms, and award the plaintiffs the keys to the City of York. (Id., at 207-215).

    A recurring theme which ran throughout this deeply flawed complaint was the plaintiffs' visceral suspicion that they were the victims of a large, amorphous judicial conspiracy in which countless actors combined together to create false and fictitious orders for the sole purpose of violating the plaintiffs' constitutional rights. That theme continues to play a prominent role in their latest filings which speculate that some unseen cabal in the federal courts has engaged in a vast jurisdictional fraud in order to dismiss their complaint.

    The truth is somewhat simpler.

    This case was initially assigned to our colleague Magistrate Judge Arbuckle, who was preparing to retire. In the span of little more than one month following the filing of their complaint, Lewis and Holmes filed a welter of motions, notices and other documents advancing an array of eccentric and idiosyncratic averments and claims. (Docs. 2-58 *passim*). Presented with this spate of curious activity, on April

24, 2025, Chief Judge Brann entered an oral order on the docket reassigning this case to the undersigned.[1]

Upon receiving this case reassignment, on April 29, 2025, we directed that magistrate judge consent forms be sent to all of the parties who had at that time entered appearances in this case. (Doc. 63). Notably, these forms did not offer the parties the option of consenting to any particular named judge. Thus, the consent form was not judge-specific. Instead, it simply asked whether the parties agreed to "have a Magistrate Judge conduct all further proceedings in this case, including trial and entry of final judgment." (Doc. 69). Further, by the time these forms were tendered to Lewis and Holmes, the plaintiffs already had been placed on notice that Judge Arbuckle was no longer handling this case and had been informed that the case was now reassigned to myself. Indeed, by May 1, 2025, I had already entered a half dozen orders in this case. (Docs, 59, 64-68). Knowing all of this, the plaintiffs expressly consented to magistrate judge jurisdiction stating in writing that they: "consent pursuant to the provisions of Standing Order 2024-04, 28 U.S.C. § 636(C)

---

[1] The plaintiffs' pleadings have at various times suggested that this pedestrian case reassignment was an action which specifically targeted them for some nefarious reason. This is incorrect. In fact, the instant case was one of a number of cases formerly assigned to retiring Magistrate Judge Arbuckle which were transferred *en masse* to the undersigned.

4

and Fed.R.Civ.P. 73(b), to have a Magistrate Judge conduct all further proceedings in this case, including trial and entry of final judgment." (Doc. 69).

This case was then assigned to the undersigned based upon the express written consent of Lewis and Holmes and those defendants who had been served and entered appearances in the litigation. We then endeavored to promptly address a bewildering array of largely frivolous filings submitted by the plaintiffs, including multiple filings styled as "emergency" motions, while taking steps to ensure that all of the parties named in this complaint were properly served. (Docs. 70-157). As a result of our efforts to ensure that all parties received notice of this lawsuit, in July of 2025, counsel entered an appearance on behalf of the York County Administration Office and York County Judicial Center, two defendants that previously had not been served in this case. (Doc. 158). The entry of these defendants in this litigation came two months after the other parties in this case had all expressly consented to magistrate judge jurisdiction.

While these newly involved defendants did not initially file an express consent to magistrate judge jurisdiction, they engaged in conduct which made it clear that they implicitly consented magistrate judge jurisdiction. Specifically, they filed pleadings which clearly identified us as the presiding judge in the case and requested that we dismiss the plaintiffs' complaint. (Doc. 162).

5

We then considered the motions to dismiss filed by all defendants. On September 30, 2025, after thoroughly examining the positions of all parties, we dismissed this complaint, finding that Lewis and Holmes' complaint was fatally flawed in at least ten separate ways which could not be remedied through any more artful form of pleading. (Docs. 179, 180).

It was only after the plaintiffs' case failed on its merits that Lewis and Holmes elected to question our jurisdiction, albeit in an odd and paradoxical fashion, filing a motion seeking reassignment of this case to a district judge despite the fact that they expressly consented in writing to magistrate judge jurisdiction. (Doc. 181). The plaintiffs' initial jurisdictional foray rested on the fact that—despite their express consent—there was no record of an express consent by the York County Administration Office and York County Judicial Center, although the conduct of those defendants plainly reflected that they had implicitly consented to magistrate judge jurisdiction. And, indeed, at our request the York County Administration Office and York County Judicial Center have now made explicit what was clearly implied by their conduct—they have filed written consent forms. (Doc. 185). Thus, presently all parties have consented in writing to magistrate judge jurisdiction.

Notwithstanding this fact, the plaintiffs have persisted in filing motions challenging the Court's jurisdiction, and, once again, suggesting that there exists

some massive illicit agreement by unauthorized persons to foist fictitious and fraudulent orders upon them. (Docs. 187, 196). Acting out of a surfeit of caution, we reopened this case in order to allow the plaintiffs to pursue these eccentric jurisdictional claims, which are now ripe for resolution. Upon consideration, for the reasons set forth below, the plaintiffs' latest motions are denied, and the clerk is directed to close this case.

## II.    Discussion

Our discussion begins with a reminder to the plaintiffs of certain basic jurisdictional facts which they acknowledged in writing when they signed and submitted a magistrate judge consent form on May 1, 2025. (Doc. 69). As Lewis and Holmes doubtless recall, the consent form they executed informed them in clear and precise terms that they: "consent pursuant to the provisions of Standing Order 2024-04, 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73(b), to have a Magistrate Judge conduct all further proceedings in this case, including trial and entry of final judgment." (Doc. 69).

Section 636(c) of Title 28, United States Code, enables parties to consent to magistrate judge jurisdiction and provides that:

> **(c)** Notwithstanding any provision of law to the contrary—
>
> **(1)** Upon the consent of the parties, a full-time United States magistrate judge or a part-time United States magistrate judge who serves as a full-

time judicial officer may conduct any or all proceedings in a jury or nonjury civil matter and order the entry of judgment in the case, when specially designated to exercise such jurisdiction by the district court or courts he serves. Upon the consent of the parties, pursuant to their specific written request, any other part-time magistrate judge may exercise such jurisdiction, if such magistrate judge meets the bar membership requirements set forth in section 631(b)(1) and the chief judge of the district court certifies that a full-time magistrate judge is not reasonably available in accordance with guidelines established by the judicial council of the circuit. When there is more than one judge of a district court, designation under this paragraph shall be by the concurrence of a majority of all the judges of such district court, and when there is no such concurrence, then by the chief judge.

**(2)** If a magistrate judge is designated to exercise civil jurisdiction under paragraph (1) of this subsection, the clerk of court shall, at the time the action is filed, notify the parties of the availability of a magistrate judge to exercise such jurisdiction. The decision of the parties shall be communicated to the clerk of court. Thereafter, either the district court judge or the magistrate judge may again advise the parties of the availability of the magistrate judge, but in so doing, shall also advise the parties that they are free to withhold consent without adverse substantive consequences. Rules of court for the reference of civil matters to magistrate judges shall include procedures to protect the voluntariness of the parties' consent.

**(3)** Upon entry of judgment in any case referred under paragraph (1) of this subsection, an aggrieved party may appeal directly to the appropriate United States court of appeals from the judgment of the magistrate judge in the same manner as an appeal from any other judgment of a district court. The consent of the parties allows a magistrate judge designated to exercise civil jurisdiction under paragraph (1) of this subsection to direct the entry of a judgment of the district court in accordance with the Federal Rules of Civil Procedure. Nothing in this paragraph shall be construed as a limitation of any party's right to seek review by the Supreme Court of the United States.

28 U.S.C. § 636 (c)

The validity of this statutory grant of consent jurisdiction to magistrate judges is beyond dispute. As the Supreme Court has observed:

> Adjudication by consent is nothing new. Indeed, "[d]uring the early years of the Republic, federal courts, with the consent of the litigants, regularly referred adjudication of entire disputes to non-Article III referees, masters, or arbitrators, for entry of final judgment in accordance with the referee's report."

<u>Wellness Int'l Network, Ltd. v. Sharif</u>, 575 U.S. 665, 674, 135 S. Ct. 1932, 1942, 191 L. Ed. 2d 911 (2015). It is also well established that a party's consent to magistrate judge jurisdiction need not be express but can be inferred from the litigants' conduct. As the Supreme Court has observed:

> The Federal Magistrate Act of 1979 (Federal Magistrate Act or Act) expanded the power of magistrate judges by authorizing them to conduct "any or all proceedings in a jury or nonjury civil matter and order the entry of judgment in the case," as long as they are "specially designated ... by the district court" and are acting "[u]pon the consent of the parties." 28 U.S.C. § 636(c)(1). The question is whether consent can be inferred from a party's conduct during litigation, and we hold that it can be.

<u>Roell v. Withrow</u>, 538 U.S. 580, 582, 123 S. Ct. 1696, 1699, 155 L. Ed. 2d 775 (2003).

This broad grant of consent jurisdiction is tempered by a narrow qualification. "The court may, for good cause shown on its own motion, or *under extraordinary circumstances shown by any party*, vacate a reference of a civil matter to a magistrate

9

judge under this subsection." 28 U.S.C. § 636 (c)(4). (emphasis added). Thus, "[o]nce a case is referred to a magistrate under section 636(c), the reference can be withdrawn only by the district court, and only 'for good cause shown on its own motion, or under *extraordinary circumstances* shown by any party.'" Fellman v. Fireman's Fund Ins. Co., 735 F.2d 55, 58 (2d Cir. 1984) (emphasis in original).

"The 'extraordinary circumstances' standard is a high bar that is difficult to satisfy." Savoca v. United States, 199 F. Supp. 3d 716, 721 (S.D.N.Y. 2016). Moreover, a litigant's subjective dissatisfaction with a magistrate judge's rulings plainly does not meet this high bar since:

> This high standard of proof prevents gamesmanship. See Washington v. Kellwood Co., No. 05 Civ. 10034 (SN), 2015 WL 8073746, at *1 (S.D.N.Y. Dec. 4, 2015). "When a party comes to rue an adverse ruling, she [or he] cannot simply return to the district judge. The magistrate judge's authority is binding." Id. "The proper means by which to correct perceived erroneous rulings is to take an appeal, not to seek the eviction of the magistrate judge from the case." Zerega Ave. Realty Corp., 2011 WL 70593, at *3 (citations and quotations omitted).

Id. Simply put, "a substantive determination [by a magistrate judge] cannot be the basis to vacate a reference; to vacate a reference on this ground would unfairly permit a party to shop for an accommodating judge." Frank v. Cnty. of Hudson, 962 F. Supp. 41, 44 (D.N.J. 1997).

Thus, by requiring a showing of extraordinary circumstances to justify the withdrawal of magistrate judge consent, § 636 makes it clear that "withdrawal of consent is not an absolute right." United States v. Neville, 985 F.2d 992, 1000 (9th Cir. 1993). Further, a litigant can only withdraw consent "if the notice of withdrawal is timely." Id.

Instead:

> Consistent with the standard for granting motions to withdraw other waivers of rights, motions to withdraw consent to trial before a magistrate may be granted only for good cause, determination of which is committed to the court's sound discretion. See Kirshberger v. United States, 392 F.2d 782 (5th Cir.1968) (withdrawal of guilty plea); Cox v. C.H. Masland & Sons, Inc., 607 F.2d 138 (5th Cir.1979) (Fed.R.Civ.P. 39(b) motion to withdraw waiver of jury trial); United States v. Mitchell, 777 F.2d 248 (5th Cir.1985) (motion for continuance to allow representation of specific counsel). It should scant need be said, but when a party can show his consent was obtained involuntarily or through undue influence, § 636(c) requires the authorization of withdrawal. See Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969) (due process requires that guilty plea be voluntarily and knowingly made).

> In exercising its discretion a court should consider a variety of factors, always remaining open and receptive to consideration of these motions. See O'Malley v. United States Fidelity & Guaranty Co., 776 F.2d 494 (5th Cir.1985); Lewis v. Thigpen, 767 F.2d 252 (5th Cir.1985) (applying standard to waiver of jury trial). Among the things a court may consider are: undue delay, Gandy v. Alabama, 569 F.2d 1318 (5th Cir.1978), inconvenience to the court and witnesses, United States v. Lochamy, 724 F.2d 494 (5th Cir.1984), prejudice to the parties, United States v. Unum, 658 F.2d 300 (5th Cir.1981), whether the movant is acting *pro se,* Lewis, whether consent was voluntary and uncoerced, United States v. Carr, 740 F.2d 339 (5th Cir.1984), whether the motion

> is made in good faith or is dilatory and contrived, Gandy, the possibility of bias or prejudice on the part of the magistrate, Chanofsky v. Chase Manhattan Corp., 530 F.2d 470 (2d Cir.1976), and whether the interests of justice would best be served by holding a party to his consent, Parks v. Collins, 736 F.2d 313 (5th Cir.1984) (motion to withdraw consent to magistrate).

Carter v. Sea Land Servs., Inc., 816 F.2d 1018, 1021 (5th Cir. 1987).

In this case, consideration of these discretionary factors weighs heavily against Lewis and Holmes. At the outset, these motions to withdraw consent, which were filed weeks after judgment was entered against the plaintiffs on the merits, are clearly untimely. Further, these post-judgment attempts to withdraw consent are plainly dilatory, expedient and contrived efforts to avoid an adverse outcome on the merits. As such, the motions are improper. Finally, Lewis and Holmes' tardy motions run afoul of the settled legal tenet that a magistrate judge's substantive rulings do not provide good cause or extraordinary circumstances justifying withdrawal of consent.

In fact, once the plaintiffs' conspiratorial conjectures are stripped away, their motions appear to rest on pillars of sand. At the outset, Lewis and Holmes seem to suggest that their May 1, 2025, written consent was invalid because they believed that they were only consenting to allow Judge Arbuckle to preside over this case. This argument is factually frivolous.

Facts are stubborn things, and in this case the undisputed facts condemn this claim by the plaintiffs. First, by the time the consent forms were tendered to Lewis and Holmes, Judge Arbuckle was no longer handling this case. Instead, it is uncontested that the case had been reassigned to the undersigned on April 24, 2025. Moreover, Lewis and Holmes clearly knew of this case transfer when they consented to magistrate judge jurisdiction since by May 1, 2025, I had already entered a half dozen orders in this case, in some instances granting their requests. (Docs, 59,64-68).

Nor can the plaintiffs save this bankrupt argument by contending that they reasonably construed the consent form they signed as some sort of license to indulge in judge shopping and treat the magistrate judges of this court as some type of legal buffet from which they could select their judge. This tortured construction of the consent form is contradicted by the plain language of the document the plaintiffs signed. That form simply did not offer the plaintiffs the option of choosing a particular named judge. Thus, the consent form was not judge-specific. Instead, it simply asked whether the parties agreed to "have a Magistrate Judge conduct all further proceedings in this case, including trial and entry of final judgment." (Doc.

13

69). Having agreed to consent to the jurisdiction of "a Magistrate Judge", the plaintiffs received precisely what to agreed to accept—a magistrate judge.[2]

Finally, the plaintiffs' motions advance another legally and factually risible argument. Despite their own express consent, the plaintiffs argue that we lacked jurisdiction because there was no record of an express consent by the York County Administration Office and York County Judicial Center. This assertion fails for at least two reasons.

First, this arguments rests upon a faulty legal premise. On this score, the legal lynchpin of Lewis and Holmes' motions is their insistence that only express written consent by all parties will suffice to confer magistrate judge jurisdiction. However, this assertion ignores the fact that the United States Supreme Court has expressly

---

[2] We note that Lewis and Holmes have on occasion suggested that the undersigned is not actually a magistrate judge. We suspect that this contention would come as a surprise to Chief Judge Chagares of the United States Court of Appeals for the Third Circuit who has entered multiple orders directing that: "The Honorable Martin C. Carlson, having consented to serve and the chief judge of the district involved having consented to such service, is RECALLED for service as a United States Magistrate Judge assigned to the District Court for the Middle District of Pennsylvania. The magistrate judge is authorized to perform the powers and duties of the office of magistrate judge as provided by the district court." Given Chief Judge Chagares' orders we are fairly confident that we are, in fact, a magistrate judge. However, if we have erred on this score, that error may be corrected on appeal.

Nor can the plaintiffs defeat this case referral by simply questioning the legitimacy of Chief Judge Brann's oral order transferring this case to the undersigned, as they attempt to do in their latest pleadings. Lewis and Holmes are not entitled to dictate to the Chief Judge how he discharges his duties.

held that consent can be inferred from a party's conduct during litigation. <u>Roell v. Withrow</u>, 538 U.S. 580, 582, 123 S. Ct. 1696, 1699, 155 L. Ed. 2d 775 (2003).

Further, in advancing this argument Lewis and Holmes turn a blind eye to the facts which reveal that the York County Administration Office and York County Judicial Center clearly consented to our jurisdiction on numerous occasions. Initially these defendants implicitly consented to our jurisdiction when they filed a motion asking us to dismiss this complaint. Further, when the plaintiffs belatedly raised this issue following the dismissal of their complaint, the defendants underscored their prior consent by filing an express written notice of consent, (Doc. 185), and restating their express consent in their response in opposition to these motions. (Doc. 189). This argument fails.

### III.  <u>Conclusion</u>

In closing, the jurisdictional challenges which Lewis and Holmes belatedly assert following the dismissal of their case are untimely, expedient, contrived, factually frivolous and legally bankrupt. Therefore, the plaintiffs' motions challenging the jurisdiction of the Court, (Docs. 187, 196), are denied, and the clerk will be directed to close this case.

An appropriate order follows.

*S/Martin C. Carlson*
MARTIN C. CARLSON
United States Magistrate Judge

DATED: December 4, 2025

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **WILLIAM EDGAR LEWIS, et al.,** | Civ. No. 1:25-CV-447 |
| **Plaintiffs,** | |
| v. | |
| | **(Magistrate Judge Carlson)** |
| **RICHARD KEUERLEBER, et al.,** | |
| **Defendants.** | |

## ORDER

AND Now, this 4th day of December 2025, for the reasons set forth in the accompanying Memorandum IT IS ORDERED that the plaintiffs' motions challenging the jurisdiction of the court (Docs. 187, 196) are DENIED and the clerk is DIRECTED to CLOSE this case.

*S/Martin C. Carlson*
MARTIN C. CARLSON
United States Magistrate Judge